**UNITED STATES of America,
Plaintiff,**

v.

**Lonnie Jay THOMPSON, Defendant.**

**No. 2:04–CR–00095 PGC.**

United States District Court,
D. Utah,
Central Division.

July 8, 2004.

Carlos Esqueda, Salt Lake City, UT, for Plaintiff.

Rebecca Hyde, Salt Lake City, UT, for Defendant.

**MEMORANDUM OPINION FINDING THE GUIDELINES CONSTITUTIONAL AS APPLIED TO THE DEFENDANT'S SENTENCING**

CASSELL, District Judge.

Defendant Lonnie Jay Thompson is before the court for sentencing on a bank

robbery. Ordinarily, such a sentencing would be governed by the Federal Sentencing Guidelines. Last week, however, this court held in *United States v. Croxford*[1] that the federal sentencing guidelines could not be constitutionally applied in certain cases. In particular, *Croxford* held that the Guidelines were constitutionally invalid where a court (rather than a jury) would make factual determinations about upward enhancements. Such judicial fact-finding, *Croxford* held, would violate the commands of the Sixth Amendment's right to a jury trial, as explicated by the Supreme Court's recent decision in *Blakely v. Washington*.[2]

In this case, Thompson argues that *Croxford* bars application of the Sentencing Guidelines to him. Thompson seemingly suggests that this case might involve a judicially-imposed upward enhancement forbidden by *Croxford*. More generally, Thompson contends that because the Guidelines system is invalid in cases involving upward enhancements (like *Croxford*), it must likewise be invalid in other cases. A Guidelines system that operates only in cases without upward enhancements, argued Thompson's able counsel, is like a "cart missing a wheel." Finally, Thompson argues that applying the Guidelines to some cases but not others would violate equal protection principles. None of these arguments is persuasive. Accordingly, the court finds that it can—indeed, must—apply the Guidelines to determine his sentence.

## FACTUAL BACKGROUND

On November 5, 2003, Thompson entered a local Key Bank and gave the teller a note instructing her to "put the money on the counter." The note also stated, "No dye packs" and "I have a gun." Although the teller did not see a gun, she took out the money, and when she reached for the bait money, Thompson shook his head. She gave him over $1700, and then he left the bank. Police later learned that before robbing the bank, Thompson burglarized a car and stole the clothes that he wore in the bank robbery.

Thompson was charged in federal court on February 18, 2004, for Bank Robbery in violation of 18 U.S.C. § 2113. The indictment alleged that on or about November 5, 2003, Thompson

> [D]id by force, violence, and intimidation, take from the person or presence of another money belonging to and in the care, custody, control, management, and possession of the Key Bank, located at 410 East 400 South, Salt Lake County, Utah, a bank whose deposits are and on the date of the robbery were then insured by the Federal Deposit Insurance Corporation.[3]

Two months later, on April 19, 2004, Thompson pled guilty to Bank Robbery pursuant to a written plea agreement. In that agreement he admitted that he had "entered the Key Bank located at 410 East 400 South, approached a teller and handed her a note," which told the teller, "put the money on the counter, no dye packs, and I have a gun."[4] Thompson also "acknowledge[d] that the bank was federally insured."[5]

In the plea agreement, he also recognizes that his sentence would be determined under the Guidelines:

> I know that the sentencing procedures in this case and the ultimate sentence

---

1. 2004 WL 1462111 (D.Utah 2004).

2. —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

3. Indictment (Dkt. # 1–1) 1–2.

4. Statement by Defendant in Advance of Plea of Guilty (Dkt. # 17–1) 5.

5. *Id.*

will be determined pursuant to the Sentencing Reform Act of 1984, and I have discussed these facts with my attorney. I further know that the final calculation by the Court for sentencing purposes under the procedures applicable to that Act may differ from any calculation of the United States, my attorney, or I may have made, and I will not be able to withdraw my plea in spite of that fact. I further understand that although the Court is required to consider any applicable sentencing guidelines, the Court may depart from the guidelines under some circumstances.[6]

Following Thompson's plea of guilty, the probation office prepared a pre-sentence report. In determining the applicable Guidelines, the office concluded that the base offense level started with a level 20 as specified in the general robbery guideline,[7] increased by an additional 2 levels because the property of a financial institution was taken.[8] Thompson was given a 3–level credit for accepting responsibility, producing a final Guideline calculation of an offense level of 19.

Thompson also has an extensive criminal record, which includes convictions for various instances of robbery, theft, criminal mischief, and drug offenses. Accordingly, he fell into the highest Criminal History Category (category VI), resulting in a final Guideline range of 63 to 78 months.

## *CROXFORD* DOES NOT INVALIDATE THE GUIDELINES IN THIS CASE

■ Thompson first contends that because the court struck down the Guidelines

in *Croxford*, they are likewise invalid here. Thompson reads *Croxford* too broadly. As *Croxford* made clear,

> [T]he court hastens to add that not all criminal defendants will be able to successfully mount such a challenge. Where the Guidelines can be applied without additional factual findings by the court beyond those found by a jury (or perhaps admitted as part of a plea proceeding), the Guidelines will still apply. The Court in *Blakely* made it clear that determinate sentencing schemes are not *per se* unconstitutional. "By reversing the judgment below, we are not, as the State would have it, 'find[ing] determinate sentencing schemes unconstitutional.' ... This case is not about whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment."[9]

Thus, as *Croxford* explained, *Blakely* casts into constitutional doubt only judicial factfinding (other than that involving a prior conviction) beyond the indictment or the plea agreement.

Here, there is no need for any judicial factfinding beyond the facts necessarily contained in the indictment. The one-count indictment charged Thompson with bank robbery.[10] Thompson knowingly and voluntarily plead guilty to that charge, specifically waiving his right to a jury trial.[11] The court can therefore take the facts in the indictment as fully established. Under these facts, the court can apply the general robbery guideline and the financial institution enhancement without the need

---

6. *See id.* at 2.

7. U.S.S.G. § 2B3.1(a).

8. U.S.S.G. § 2B3.1(b)(1).

9. *Croxford,* 2004 WL 1462111 at *9 (quoting *Blakely,* 124 S.Ct. at 2540).

10. *See* Indictment (Dkt. # 1–1) (charging violation of 18 U.S.C. § 2113(a)).

11. *See* Statement by Defendant in Advance of Plea of Guilty (Dkt. # 17–1) 2–3 ("I know that I have a right to a trial by jury.... By pleading guilty, I waive the right to a trial.").

for any judicial factfinding that might bring *Blakely* into play.

In addition to the facts contained in the indictment, the court has the facts Thompson admitted in his plea of guilty. Thompson acknowledged that he "entered the Key Bank located at 410 East 400 South, approached a teller and handed her a note," which told the teller, "put the money on the counter, no dye packs, and I have a gun." [12] Thompson also "acknowledge[d] that the bank was federally insured." [13]

Using these admitted facts in the plea to determine a sentence is entirely consistent with *Blakely*. As *Blakely* specifically stated, "When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." [14] Indeed, "[e]ven a defendant who stands trial may consent to judicial factfinding as to sentence enhancements." [15] In this case, Thompson fully understood that at the time he entered his plea that his sentence would be determined under the Guidelines. He stated in the plea agreement:

> I know that the sentencing procedures in this case and the ultimate sentence will be determined pursuant to the Sentencing Reform Act of 1984, and I have discussed these facts with my attorney. I further know that the final calculation by the Court for sentencing purposes under the procedures applicable to that Act may differ from any calculation of the United States, my attorney, or I may have made, and I will not be able to withdraw my plea in spite of that fact. I further understand that although the

Court is required to consider any applicable sentencing guidelines, the Court may depart from the guidelines under some circumstances. [16]

In short, it is possible for the court to fully and completely apply the Guidelines to this case without looking beyond the facts found within the four corners of the plea agreement. Indeed, the court need look no further than the four corners of the indictment to arrive at a Guideline calculation. As a result, *Blakely* does not invalidate application of the Guidelines, and the court must, therefore, follow the statutory command to impose a sentence consistent with the Guidelines. [17]

Thompson raises one last technical argument. Thompson argues that, while he pled guilty to bank robbery, he did not specifically admit that he took the "property of a financial institution"—the fact required to apply the 2–level enhancement under the Guidelines. This is playing semantics. It is obvious that robbing a *bank* is taking the property of a *financial institution*.

For all these reasons, there is no *Blakely* problem in applying the Guidelines to Thompson.

### THOMPSON'S OTHER CONSTITUTIONAL ARGUMENTS ARE UNPERSUASIVE

■ Perhaps recognizing the difficulty of analogizing his situation to Croxford's, Thompson quickly raised the fallback argument that *Croxford* requires that the Guidelines be declared unconstitutional in all cases. With this argument, Thompson essentially seeks to mount a facial chal

---

**12.** *Id.* at 5.

**13.** *Id.*

**14.** *Blakely,* 124 S.Ct. at 2541–42.

**15.** *Id.*

**16.** *See* Statement by Defendant in Advance of Plea of Guilty (Dkt. # 17–1) 2.

**17.** *See* 18 U.S.C. § 3553(b).

lenge to the Guidelines. The traditional rule, however, is that "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court."[18] While this rule has certain exceptions—such as allowing facial challenges to statutes that chill constitutionally protected speech[19]—none of the exceptions is applicable here. Thompson cannot rely on a facial challenge but must prove that the Guidelines are unconstitutional as applied in *his* case. This he cannot do.

Thompson also raises an equal protection claim. Noting that the sentences for some defendants (e.g., Mr. Croxford's) will be determined without the Guidelines, Thompson essentially claims that it is unfair to have his determined with them. This argument, too, is without merit. Many similarly-situated criminal defendants end up with different sentences because of constitutional constraints without any equal protection concern. For instance, one criminal may receive a lengthy prison sentence, while another who has committed the same crime may escape punishment entirely because of application of the Fourth Amendment's exclusionary rule excluding unlawfully obtained evidence. Such differential treatment occurs simply because of our system's respect for the constitutional rights of the accused. The fact that one criminal may avoid application of duly-enacted congressional statute is no reason to compound the problem by failing to apply the statute to others.

Moreover, any differential treatment between Thompson and other defendants is likely to be modest. As *Croxford* explains, even where the Guidelines cannot be constitutionally applied, they provide "useful instruction on the appropriate sentence" and "generally produce sentences that accord with the public's views of just punishment."[20] Thus, in *Croxford,* this court imposed a sentence that deviated only slightly from that commanded by the Guidelines. This is consistent with a statutory command that directs that court to look to the Guidelines as instructive even where they are inapplicable:

> In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall ... have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the policy statements of the Sentencing Commission.[21]

Finally, it is worth noting that the approach recommended by Thompson might, if anything, exacerbate disparate treatment of similarly-situated defendants. Thompson essentially proposes a return to the pre-Guidelines days, when judges had broad discretion to determine an appropriate sentence so long as it fell within the statutory range. This system might let prison sentences appear "to depend on 'what the judge ate for breakfast' on the day of the sentencing."[22]

In sum, it does not violate equal protection principles to apply the Guidelines to Thompson even though they may be inapplicable to other defendants.

---

**18.** *Los Angeles Police Dept. v. United Reporting Pub. Corp.,* 528 U.S. 32, 38, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999).

**19.** *Id.*

**20.** 2004 WL 1462111 at *13.

**21.** 18 U.S.C. § 3553(b).

**22.** *Croxford,* 2004 WL 1462111 at *17 (quoting *Blakely,* 124 S.Ct. at 2554 (Breyer, J., dissenting)).

## DETERMINING THE SENTENCE IN THIS CASE

██ Because the Guidelines control Thompson's sentence, the court must determine the appropriate sentence within the 63 to 78 month range. In light of the defendant's guilty plea, the government is recommending the low end of this range. The court agrees that this sentence is appropriate and imposes a 63 month sentence under the Guidelines. The court rejects Thompson's motion for a downward departure for reasons stated at the sentencing hearing.

As noted in *Croxford,* as a precautionary measure, the court believes it is advisable to impose a backup sentences in cases such as this one until the implications of *Blakely* have been fully sorted out by the Supreme Court.[23] Accordingly, as the fallback sentence in this case, if the Guidelines should be found to be unconstitutional as applied to Thompson, the court would still impose a 63 month sentence. Even if the Guidelines cannot be constitutionally applied, they are instructive as to the appropriate sentence here. Having considered all of the relevant facts of this case, were the court to proceed without the Guidelines, it would impose a 63 month sentence.

## CONCLUSION

The court holds that the Federal Sentencing Guidelines can be constitutionally applied to determine Thompson's sentence. Thompson is sentenced to serve a term of 63 months in prison.

SO ORDERED.