UNITED STATES of America

v.

Frederick LEACH

No. CRIM. 02–172–14.

United States District Court,
E.D. Pennsylvania.

July 13, 2004.

Richard Lloret and Kathy Stark, United States Attorney's Office, Philadelphia, PA, for U.S.

Thomas C. Egan, III, Norristown, PA, for Defendant.

### MEMORANDUM

DALZELL, District Judge.

Believing, as we do, that the Supreme Court's decision less than three weeks ago in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), fundamentally changes the federal sentencing landscape, we write at some length to explain how we arrived at the sentence of 188 months that we imposed on this defendant this day.

*Background*

On the morning he was to begin his trial as part of the thirty-seven defendant drug conspiracy prosecution in *United States v. Courtney Carter*, Crim. No. 02–172, Frederick Leach pleaded guilty to Counts 1, 38–43, 50 and 51 of the Third Superseding Indictment. Specifically, he pleaded guilty to conspiracy to distribute more than five kilograms of cocaine, and more than fifty grams of cocaine base, in violation of 21 U.S.C. § 846, which subjected him to a statutory range of ten years to life imprisonment. Counts 38, 40, 42 and 50 charged Leach with possession with intent to distribute small quantities of cocaine base on various occasions, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), thereby subjecting him on each count to a twenty-year statutory maximum punishment. Counts 39, 41, 43 and 51 charged Leach with possession with intent to distribute the cocaine base within 1,000 feet of a school, in violation of 21 U.S.C. § 860, subjecting him to a statutory imprisonment range of one to forty years for each count. Notably, Leach pleaded "open" to these counts, and thus there was no plea agreement.

The July 6, 2004 Presentence Investigation Report, at ¶ 172, recommended that we find that Leach's base offense level is 40 because Leach's "criminal activity involved 1.5 kilograms of cocaine base ("crack") and more than fifty (50) kilograms of cocaine." Because of the school offenses, the operation of U.S.S.G. § 2D1.2 results in an additional two offense levels onto the level 38 that would be imposed based purely on the drug quantity. In addition, ¶ 174 of the Presentence Investigation Report adds two offense levels pursuant to U.S.S.G. § 2D1.1(b)(1) because, during "the course of the conspiracy, the defendant, along with others, carried a firearm."

As will now be seen, the application of *Blakely*'s teaching to Leach's case has profound consequences on the Guidelines calculus contained in the Presentence Investigation Report.

*Blakely*

On June 24, 2004, the same five Justices who decided *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), extended *Apprendi* to a guidelines system in the State of Washington and held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely* at 2536. Lest there be any ambiguity about the meaning of this sentence, Justice Scalia, for the Court, added:

> In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," ..., and the judge exceeds his proper authority.

*Id.* (citation omitted).

Four Justices, in three dissenting opinions, made clear their view that *Blakely* sounded the death knell for the federal Sentencing Guidelines. *See Blakely* at 2548—50 (O'Connor, J., dissenting); *id.* at 2561 (Breyer, J., dissenting) [1]; *see also id.* at 2550 (Kennedy, J., dissenting). In response to these concerns, the *Blakely* Majority merely stated that "the Federal Guidelines are not before us, and we express no opinion on them." *Id.* at 2538 n. 9.

*Responses to Blakely*

As might be expected, there has been an immediate, massive response to *Blakely* from both the federal courts and the United States Department of Justice.

In a July 2, 2004 memorandum from Deputy Attorney General James Comey to "All Federal Prosecutors", the Deputy Attorney General in one paragraph considers the possibility that "the rule announced in *Blakely* does not apply to the Federal Sentencing Guidelines, and that the Guidelines may continue to be constitutionally applied in their intended fashion, *i.e.*, through factfinding by a judge, under the preponderance of the evidence standard, at sentencing." *Comey Mem.* at 1. The Deputy Attorney General then devotes the balance of his memorandum to what the Government's view is "[i]f courts disagree with the government's legal position on the inapplicability of *Blakely* to the Guidelines": *Id.* at 2. The Government's fallback position bears quoting at length:

> **First**, the Guidelines remain constitutional and applicable if the Guidelines sentence can be calculated without the resolution of factual issues beyond the admitted facts or the jury verdict on the elements of the offense of conviction. Thus, in cases where a court, applying the Guidelines as they were intended, finds that there are no applicable upward adjustments under the Guidelines beyond the admitted facts or the jury verdict on the elements of the offense, the Guidelines are constitutional and should be applied. **Second**, in a case in

---

**1.** It bears emphasis that Justice Breyer's understanding of the federal Guidelines is enriched by his unique experience with them. As Chief Counsel for the Senate Judiciary Committee, he was present during the Sentencing Reform Act of 1984's gestation. While serving as a Judge (then Chief Judge) of the First Circuit, he was Vice–Chair of the first Sentencing Commission that promulgated the Guidelines that became effective on November 1, 1987.

which the defendant agrees to waive his right to resolution of contested factual issues under the *Blakely* procedural requirements, the Guidelines should be applied. Thus, waivers of *"Blakely* rights" in connection with plea agreements and guilty pleas may be sought. **Third**, in a case in which there are applicable upward adjustments under the Guidelines, and the defendant desires to contest the underlying facts under the *Blakely* procedures, the Guidelines system as a whole cannot be constitutionally applied. *Id.* at 2.

In our view, by far the most helpful analysis of what to do, post-*Blakely,* was supplied last Friday by Judge Posner for the Seventh Circuit in *United States v. Booker,* 375 F.3d 508 (7th Cir.2004). After careful analysis of the federal Sentencing Guidelines, Judge Posner agreed with the four dissenters in *Blakely* who "were unable to identify a meaningful difference between the Washington sentencing guidelines and the federal sentencing guidelines." *Id.* at 2535. Thus, Judge Posner, for himself and Judge Kanne, concluded that *"Blakely* dooms the guidelines insofar as they require that sentences be based on facts found by a judge." *Id.* at 2534.

The point upon which Judge Posner and dissenting Judge Easterbrook disagreed was, as Judge Posner put it,

> the Supreme Court's ukase that the lower federal courts are not to overrule a Supreme Court decision even if it seems manifestly inconsistent with a subsequent decision, unless the subsequent decision explicitly overruled the earlier one. *State Oil Co. v. Khan,* 522 U.S. 3,

20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997).

*Id.* at 2536.

■ The Seventh Circuit judges discussed whether, in fact, applying *Blakely* to the federal Guidelines trespasses upon the Supreme Court's decisions in *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), and *Edwards v. United States,* 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998).[2] There is no point here in rehashing the analysis of Judges Posner and Easterbrook about *Mistretta* and *Edwards.* *Mistretta* offered no word about Sixth Amendment allocations of power to judges and juries, but instead dealt exclusively with delegation and separation of powers issues. Indeed, Justice Scalia's lone dissent was based only on his view that "I can find no place within our constitutional system for an agency created by Congress [*i.e.,* the Sentencing Commission] to exercise no governmental power other than the making of laws." *Mistretta,* 488 U.S. at 413, 109 S.Ct. 647 (Scalia, J., dissenting). As to *Edwards,* we agree with Judge Posner that it "does not mention the Sixth Amendment or the constitutional right to a jury trial, and indeed states that 'we need not, and we do not, consider the merits of petitioners' statutory and constitutional claims.'" *Booker,* at 513 (quoting *Edwards,* 523 U.S. at 516, 118 S.Ct. 1475). As there is no square prior Supreme Court decision on the subject *Blakely* addressed, we join Judge Posner in his conclusion that *Blakely* does apply to the federal sentencing regime and doing so does not offend *State Oil Co. v. Khan.* We also agree with

---

**2.** There were, of course, many Supreme Court decisions after *Mistretta* interpreting the Guidelines and their enabling statute. None of the cases addressed the issues *Blakely* did, and all presupposed the constitutionality of the Guidelines regime. These realities eluded the attention of the Fifth Circuit panel that

yesterday upheld the Guidelines post-*Blakely,* *United States v. Francisco D. Pineiro,* No. 03–30437, 2004 WL 1543170 (5th Cir. July 12, 2004). Oddly, though the panel cited *Booker,* it ignored it thereafter.

In any event, we find *Booker* 's analysis to be far more persuasive than *Pineiro* 's.

Judge Posner that "[w]hen the Supreme Court says that it is not resolving an issue, it perforce confides the issue to the lower federal courts for the first pass at resolution." *Booker*, at 513.

Even if we harbored doubt as to Judge Posner's analysis of *Mistretta* and *Edwards* (which we do not), a slavish adherence to *State Oil Co. v. Khan*, would, in our view, lead to intolerable results. As Justice Breyer, who was present at the creation of the federal Guidelines,[3] points out in his dissent, the consequences of *Blakely*'s holding are grave and immediate on the whole federal criminal justice system. To blind ourselves to *Blakely*'s teaching in the name of a procedural prerogative (and one that is likely inapplicable anyway) would ignore the presence of an elephant in the federal criminal courtroom. Federal criminal sentencing is simply too urgent and important to indulge such formalism until such time in the indefinite future when the Supreme Court gives its definitive word.

To be sure, as Judge Easterbrook points out in his dissent, the Supreme Court is capable of surprising careful observers. *See Booker*, at 516 (Easterbrook, J., dissenting) (discussing *Lemon v. Kurtzman*, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) and *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)). But it would seem to us that the only realistic possibility for *Blakely* not being applied to the Sentencing Guidelines would be a change in personnel of the Supreme Court. If one of the five Justices in the *Blakely* majority elected, say, to retire, one could say that all *Blakely*-based bets are then off. But we cannot reach so cynical a level of legal realism as to base our real-world sentencing decisions on such a possibility. In-

deed, to do so would, in our view, constitute the antithesis of law.

*Sentencing Analysis*

▮ Under the teaching of *Blakely* and *Booker*, we therefore will make no enhancement to Leach's sentence that he has not, by his admission, already agreed to. Because there is, as the United States Department of Justice and Judge Posner recognize, the possibility that the Guidelines do not admit to an easy severability under *Blakely*, we shall also announce "a nonguidelines alternative sentence", *Booker*, at 515.

In his guilty plea, Leach admitted to distributing fifty grams of crack and five kilograms of cocaine, quantities that would subject him to offense level 32. *See* U.S.S.G. § 2D1.1(f). Because of his plea to the school counts, however, U.S.S.G. § 2D1.2(a)(1) comes into play, raising the offense level to 34. At his plea colloquy, Leach admitted to carrying a gun, adding two more levels under § 2D1.1(b)(1), to which we subtract two levels for acceptance of responsibility.

At Criminal History IV, the sentencing range would be 210 to 262 months, and not the 360 months to life range set forth in the Presentence Investigation Report. But as the Government notes in its memorandum, Leach's Criminal History score is enhanced by three points because he was on probation and the instant offense was committed within two years of Leach's release from jail in 2000. *See* PSI ¶ 188. Without these points, which *Blakely* renders impermissible, Leach's Criminal History becomes III and his sentencing range therefore becomes 188–235 months. If the Guidelines apply, we would sentence Leach to 188 months because of his remorse and minor role.[4]

---

3. See note 1, *supra*.

4. Assuming 18 U.S.C. § 3553(c)(1) survives *Blakely*, this memorandum also constitutes our Statement of Reasons for the sentence.

562

As noted, Leach's statutory sentencing range is from a mandatory minimum of ten years to life imprisonment. Taking into account his remorse, as well as his relatively minor role in this massive conspiracy, our non-Guidelines alternative sentence would also be 188 months, being above the 120 month floor and below what his sentence would have been under the Guidelines system.