**UNITED STATES of America,
Plaintiff,**

v.

**William H. JOHNSON, Defendant.**

No. CR.A. 6:04–00042.

United States District Court,
S.D. West Virginia.
Parkersburg Division.

Aug. 13, 2004.

Lisa G. Johnston, U.S. Attorney's Office, Charleston, for the United States.

Edward H. Weis, Federal Public Defender's Office, Charleston, for the Defendant.

## MEMORANDUM OPINION

GOODWIN, District Judge.

The defendant, William H. Johnson, pleaded guilty to violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2), which prohibit the possession of a firearm by a convicted felon. On August 12, 2004, the defendant appeared before the court for sentencing. Pursuant to United States Sentencing Guidelines (the Guidelines), the base offense level for this crime is 14. U.S. Sentencing Guidelines Manual § 2K2.1(a)(6)(A) (2003). The pre-sentence report recommended a two-point enhance-

ment because the defendant had stolen the gun involved in the offense from his brother's home. *Id.* at § 2K2.1(b)(4). The total offense level recommended by the probation officer was therefore 16. After a three-point reduction for acceptance of responsibility, the offense level was 13. *Id.* at § 3E1.1(a). The probation officer attributed four criminal history points to the defendant, placing him in criminal history category III. *Id.* at § 5A. Based on a total offense level of 13 and a criminal history category of III, the recommended sentencing range was 18–24 months. *Id.*

The defendant objected to the pre-sentence report. He argued that *Blakely v. Washington,* — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), as interpreted by this court in *United States v. Shamblin,* 323 F.Supp.2d 757 (S.D.W.Va.2004), prohibits the court from relying on the stolen gun enhancement or prior convictions to increase his sentence. The court overruled the defendant's objections to the pre-sentence report because the Fourth Circuit has recently held that *Blakely* does not invalidate the United States Sentencing Guidelines. *See U.S. v. Hammoud,* 378 F.3d 426 (4th Cir.2004). Accordingly, the court sentenced the defendant within the Guideline range to a term of imprisonment of eighteen months.

In *Hammoud,* the Fourth Circuit recommended that "in the interests of judicial economy ... district courts within the Fourth Circuit also announce, at the time of sentencing, a sentence pursuant to 18 U.S.C. § 3553(a), treating the guidelines as advisory only." The defendant objected to imposition of an alternative sentence, and I sustained that objection. I write to explain my reasons for failing to follow our appellate court's recommendation to impose an alternative sentence in this case.

To deal with uncertainty wrought by *Blakely,* a few courts have suggested that

imposing alternative sentences may prevent further disarray once *Blakely's* effect on the Guidelines is more clearly established.[1] These courts cite no authority for the proposition that a court may impose an alternative sentence.[2] Presumably, the validity of these alternative sentences depends upon some inherent power of the sentencing court to act in the interests of judicial economy.

Although preserving judicial resources is a worthy goal, it is not equal to the goal of maintaining confidence in our justice system. People must believe—and courts must assure—that judgments depriving citizens of their liberty are required by law and lack neither finality nor certainty. Confidence in the system is undermined when a judge treats a defendant like an unruly child ordered to go to his room and stay there until the courts determine a just punishment. I respectfully decline, without binding direction, to play the role of wavering disciplinarian.

Hypothetical sentencing is an abdication of my duty to *decide* legal issues. It is surely unprincipled, if not unlawful, for lower courts to describe alternatives and present those alternatives to a higher court for a final, binding decision. Summarizing the relevant legal arguments and offering possible conclusions is not judging. Judicial decision-making, like the adversarial process upon which it stands, thrives on the pressure of reaching—and explaining—a single result. Formulating multiple-choice questions to be answered by a higher court is an inappropriate and injudicious substitute for deciding a case.

Here, of course, the Fourth Circuit *has* made a decision that *Blakely* does not apply to the Guidelines. It has also recommended, however, that this court give an alternative sentence that would presumably take effect if the Supreme Court disagrees. My concern is that district courts and appellate courts must routinely make decisions that may be affected by cases pending on appeal before higher courts. If the function of lower courts is reduced to offering up a this-or-that option for later judgment, then the intellectual rigor promoted by the pressure to *decide the issue* is eliminated. Put simply, judicial decision-making is an act best performed without a net.

Even if I were inclined to exercise some inherent power to impose an alternative sentence in the interests of judicial economy, those interests would not be served here. Clearly, imposing two sentences rather than one would increase the sentencing court's workload. I would have to assess the proper Guidelines sentence, and then determine, treating the Guidelines as advisory, a second sentence. I would have to justify these two sentences on the rec-

---

**1.** *See, e.g., U.S. v. Booker,* 375 F.3d 508, 515–16 (7th Cir.2004) ("As a matter of prudence, the judge should in any event select a nonguidelines alternative sentence"); *U.S. v. Leach,* 325 F.Supp.2d 557, 561–62 (E.D.Pa. 2004) ("Because there is ... the possibility that the Guidelines do not admit to an easy severability under *Blakely,* we shall also announce a nonguidelines alternative sentence") (internal citation omitted). *But see U.S. v. Zompa,* 326 F.Supp.2d 176 (D.Me.2004) ("[T]his court is not inclined—nor does it believe it is allowed—to render hypothetical sentences").

**2.** Likewise, before the Supreme Court decided *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), which held that the Guidelines did not violate separation of powers principles, some district courts chose to impose alternative sentences. Appellate courts accepted this practice, but cited no authority permitting the imposition of more than one sentence. *See, e.g., U.S. v. Draper,* 888 F.2d 1100, 1105 (6th Cir.1989); *U.S. v. Brittman,* 872 F.2d 827, 829 (8th Cir. 1989).

ord, and resolve objections to both sentences.[3]

This extra work might be worthwhile *if* the imposition of an alternative sentence would prevent subsequent motions for resentencing by defendants in the event that their Guideline sentences were declared unconstitutional.[4] There is a strong likelihood, however, that imposing the recommended alternative sentence will not forestall the need for resentencing. The Fourth Circuit's alternative sentencing recommendation works only if: (1) the Supreme Court ultimately decides that *Blakely* applies to the Guidelines; (2) finds the Guidelines unconstitutional *in toto;* and then (3) remedies the constitutional defect by reading out the mandatory language of the Guidelines and ordering courts to impose sentences pursuant to 18 U.S.C. § 3553(a), treating the Guidelines as advisory. The one certain thing about post-*Blakely* jurisprudence is that nothing is certain. Thus, taking a course which depends upon this series of presumptions—none of which may pan out—seems more like an exercise in futility than a conservation of judicial resources.[5]

Given the divergent approaches to *Blakely* in federal courts, it must be considered that the Supreme Court will reach a decision inconsistent with at least one of the Fourth Circuit's multiple assumptions. If the Supreme Court agrees with the Fourth Circuit's decision in *Hammoud*,[6] then the Guidelines survive *Blakely* and an alternative sentence would be obsolete. If the Court decides that *Blakely* applies to the Guidelines, which is the conclusion that the great majority of district courts and

**3.** I suspect that the *sub rosa,* but well-intentioned, recommendation of the Fourth Circuit is to impose the same sentence twice. It is by no means clear that this court or other courts would impose the narrowly-mandated Guidelines sentence in every case if the Guidelines were only advisory. *See U.S. v. Emmenegger,* 329 F.Supp.2d 416 427–29 (S.D.N.Y.2004).

**4.** In pre-*Mistretta* cases where district courts imposed alternative sentences, appellate courts ultimately found that a second sentencing hearing was not necessary for the alternative sentence to take effect. *See, e.g., U.S. v. Warner,* 894 F.2d 957, 961 (8th Cir.1990); *Brittman,* 872 F.2d at 829. *But see U.S. v. Martin,* 913 F.2d 1172, 1176–77 (6th Cir. 1990) (trial court could not impose an alternative sentence 134 days after it filed its final commitment order where the court no longer had jurisdiction over the case). Given the current unsettled state of sentencing law, I am hesitant to say that a defendant would not have a right to a second sentencing hearing, even if his alternative sentence appeared to comport with the Supreme Court's ultimate decision. As a practical matter, however, it is likely that an alternative sentence would *not* comport with the new sentencing regime because there are more than two sentencing

options for post-*Blakely* cases. This is discussed further below.

**5.** I do not mean to suggest that the Fourth Circuit's intention was to recommend a futile endeavor. Given the twenty years of experience manifest in the Guidelines, all courts would like to believe that they will remain viable as a strongly advisory sentencing resource, if not a mandatory sentencing scheme. I merely point out that other outcomes are possible.

**6.** *See* 378 F.3d 426, 2004 WL 1730309; *see also U.S. v. Pineiro,* 377 F.3d 464 (5th Cir. 2004); *U.S. v. Olivera–Hernandez,* 328 F.Supp.2d 1185 (D.Utah 2004).

The Second Circuit has decided to continue to apply pre-*Blakely* sentencing law while awaiting a decision on *Blakely* questions certified to the Supreme Court. *See* Doug Berman, *www.sentencing.typepad.com,* post for Thursday, August 12, 2004 (discussing *United States v. Mincey,* where the Second Circuit decided that the district court did not err in applying the Guidelines, but withheld the mandate pending a Supreme Court decision). This suggests that the Second Circuit finds *Blakely* inapplicable to the Guidelines, but the court provides no reasoning on the issue.

the Ninth Circuit have reached,[7] it does not ineluctably follow that the Court's remedy will be to treat the Guidelines as advisory, as the Fourth Circuit assumes.

The Court may decide that the Guidelines are not unconstitutional *in toto*, but that the constitutionally-infirm provisions[8] of the Guidelines can be severed, and the remainder applied in a manner consistent with the Sixth Amendment. Accordingly, the Guidelines would not become advisory; rather, the Guidelines would continue to

have the force of law to the extent that they comply with the Constitution. This approach is the one taken by the Ninth Circuit and a number of district courts, including this one.[9]

Alternatively, the Court may find that the constitutional portions of the Guidelines cannot be severed from the unconstitutional portions, and therefore, the entire Guideline system must fail. Several district courts have reached this result.[10]

---

**7.** *U.S. v. Ameline*, 376 F.3d 967 (9th Cir. 2004); *U.S. v. Booker*, 375 F.3d 508 (7th Cir. 2004); *U.S. v. O'Daniel*, 2004 WL 1767112 (N.D.Okla. Aug.6, 2004); *U.S. v. Gibson*, No, 1:04–cr–12 (D.Vt. July 30, 2004); *U.S. v. Mueffleman*, 327 F.Supp.2d 79 (D.Mass. 2004); *U.S. v. Zompa*, 326 F.Supp.2d 176 (D.Me.2004); *U.S. v. Carter*, 2004 U.S. Dist. LEXIS 14433 (C.D.Ill. July 23, 2004); *U.S. v. Parson*, No. 6:03–cr–204–Orl–31DAB (M.D.Fla. July 22, 2004); *U.S. v. Sisson*, 326 F.Supp.2d 203 (D.Mass.2004); *U.S. v. Khoury*, No. 6:04–cr–24–Orl–31DAB (M.D.Fla. July 21, 2004); *U.S. v. Terrell*, 2004 WL 1661018, 2004 U.S. Dist. LEXIS 13781 (D.Neb. July 22, 2004); *U.S. v. Marrero*, 325 F.Supp.2d 453 (S.D.N.Y.2004); *U.S. v. King*, 328 F.Supp.2d 1276 (M.D.Fla.2004); *U.S. v. Sweitzer*, No. 1:CR–03–087–01 (M.D.Pa. July 19, 2004); *U.S. v. Harris*, 325 F.Supp.2d 562 (W.D.Pa.2004); *U.S. v. Lockett*, 325 F.Supp.2d 673 (E.D.Va.2004); *U.S. v. Landgarten*, 325 F.Supp.2d 234 (E.D.N.Y.2004); *U.S. v. Einstman*, 325 F.Supp.2d 373 (S.D.N.Y.2004); *U.S. v. Leach*, 325 F.Supp.2d 557 (E.D.Pa.2004); *U.S. v. Croxford*, 324 F.Supp.2d 1255 (D.Utah 2004); *U.S. v. Khan*, 325 F.Supp.2d 218 (E.D.N.Y.2004); *U.S. v. Toro*, 2004 WL 1553602, 2004 U.S. Dist. LEXIS 12762 (D.Conn. July 6, 2004); *U.S. v. Montgomery*, 324 F.Supp.2d 1266 (D.Utah 2004); *U.S. v. Thompson*, 324 F.Supp.2d 1273 (D.Utah 2004); *U.S. v. Lamoreaux*, 2004 WL 1557283, 2004 U.S. Dist. LEXIS 13225 (W.D.Mo. July 7, 2004); *U.S. v. Medas*, 323 F.Supp.2d 436 (E.D.N.Y.2004); *U.S. v. Shamblin*, 323 F.Supp.2d 757 (S.D.W.Va.2004); *U.S. v. Watson*, CR 03–0146 (D.D.C. June 30, 2004); *U.S. v. Fanfan*, No. 03–47, 2004 WL 1723114 (D.Me. June 28, 2004); *U.S. v. Gonzalez*, 2004 WL 1444872, 2004 U.S. Dist. LEXIS 11760 (S.D.N.Y. June 28, 2004).

Panels in the Sixth Circuit and the Eighth Circuit have also found that *Blakely* applies to the Guidelines, but those decisions have been vacated for rehearing *en banc*. *See U.S. v. Mooney*, 2004 U.S.App. LEXIS 15301 (8th Cir. July 23, 2004) (per curiam) (vacated upon grant of reh'g en banc (Aug. 6, 2004)); *U.S. v. Montgomery*, 2004 WL 1562904, 2004 U.S.App. LEXIS 14384 (6th Cir. July 14, 2004) (vacated upon grant of reh'g en banc (July 19, 2004) and voluntarily dismissed (July 23, 2004)).

**8.** Namely, the procedure whereby enhancements to the base offense level are applied by a judge using the preponderance of the evidence standard.

**9.** *Ameline*, 376 F.3d 967; *O'Daniel*, 328 F.Supp.2d 1168; *Gibson*, No, 1:04–cr–12 (D.Vt. July 30, 2004); *Zompa*, 326 F.Supp.2d 176; *Terrell*, 2004 WL 1661018, 2004 U.S. Dist. LEXIS 13781; *Leach*, 325 F.Supp.2d 557; *Khan*, 325 F.Supp.2d 218; *Toro*, 2004 WL 1553602, 2004 U.S. Dist. LEXIS 12762; *Montgomery*, 324 F.Supp.2d 1266; *Shamblin*, 323 F.Supp.2d 757; *Watson*, CR 03–0146 (D.D.C. June 20, 2004); *Fanfan*, No. 03–47, 2004 WL 1723114 (D.Me. June 28, 2004); *Gonzalez*, 2004 WL 1444872, 2004 U.S. Dist. LEXIS 11760.

**10.** *Mueffleman*, 327 F.Supp.2d 79; *Carter*, 2004 U.S.Dist. LEXIS 14433; *Parson*, No. 6:03–cr–204–Orl–31DAB (M.D.Fla. July 22, 2004); *Sisson*, 326 F.Supp.2d 203;. *Khoury*, No. 6:04–cr–24–Orl–31DAB (M.D.Fla. July 21, 2004); *Marrero*, 325 F.Supp.2d 453; *King*, 328 F.Supp.2d 1276; *Sweitzer*, No. 1:CR–03–087–01 (M.D.Pa. July 19, 2004); *Harris*, 325 F.Supp.2d 562; *Lockett*, 325 F.Supp.2d 673; *Einstman*, 325 F.Supp.2d 373; *Croxford*, 324

The Fourth Circuit clearly expects that this will be the Supreme Court's approach if it applies *Blakely* to the federal Guidelines. Rejection of the mandatory form of the Guidelines, however, does not inevitably require employing an advisory form. Title 18 § 3553(b) makes sentencing under the Guidelines mandatory. Congress, in fact, rejected an amendment to make the Guidelines advisory.[11] It is not clear that the Supreme Court would choose to disregard the mandatory language of § 3553(b) and declare the Guidelines advisory.[12] The alternative, of course, is for judges to be left to exercise discretion, as they did before promulgation of the Guidelines.

■ The Fourth Circuit's recommendation also presumes that, if the Guidelines are unconstitutional and non-severable, 18 U.S.C. § 3553(a) will nevertheless remain good law.[13] Severability is a question of legislative intent. *See Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 191, 119 S.Ct. 1187, 143 L.Ed.2d 270 (1999); *Buckley v. Valeo*, 424 U.S. 1, 108–09, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam). The only *legislative* act involved here is the Sentencing Reform Act (SRA). The Guidelines are merely the sentencing scheme created by the Sentencing Commission pursuant to the SRA. Therefore, the Supreme Court may undertake the severability analysis with respect to the SRA, rather than with respect to the Guidelines alone. Persuasive arguments have been made that this is the better approach.[14] If the Supreme Court took this approach to the severability analysis, and found that the constitutionally-infirm portions of the Guidelines were not severable from the remainder of the SRA, then the entire SRA would be declared unconstitutional.[15] In that situation, § 3553(a), which was passed as part of the SRA, would likewise be unconstitutional.

F.Supp.2d 1255; *Thompson*, 324 F.Supp.2d 1273; *Lamoreaux*, 2004 U.S. Dist. LEXIS 13225.

Two judges have held that where enhancements apply, the Guidelines are not severable and cannot be applied, but where enhancements do not apply, the Guidelines remain applicable. *See Lockett*, 325 F.Supp.2d 673; *Thompson*, 324 F.Supp.2d 1273.

The Sixth and Eight Circuits also concluded that portions of the Guidelines were non-severable from the whole, but those decisions have been vacated for rehearing en banc. *See Mooney*, 2004 U.S.App. LEXIS 15301; *Montgomery*, 2004 WL 1562904, 2004 U.S.App. LEXIS 14384.

11. *See Mistretta*, 488 U.S. at 367, 109 S.Ct. 647 (citing S.Rep. No. 98–225 (1983), 1984 U.S.C.C.A.N. 3182, 79).

12. Of course, the Guidelines would be helpful to judges in the exercise of their discretion. I simply note that the Supreme Court may not explicitly make the Guidelines advisory.

13. The only decision explicitly holding that § 3553(a) does remain legally operative and binding after declaring the Guidelines uncon-stitutional was vacated for rehearing *en banc*. *See Montgomery*, 2004 WL 1562904, 2004 U.S.App. LEXIS 14384.

14. The courts that have decided that the Guidelines are non-severable have assumed that the severability analysis addresses only the Guidelines, but they have not justified this assumption. Legal commentators and an impressive *Blakely* severability brief submitted on behalf of a defendant in the Eastern District of Wisconsin have outlined a severability approach focused on the SRA. *See* Doug Berman, *www.sentencing.typepad.com*; King & Klein, *Beyond Blakely*, 16 Fed. Sent. Rep., Part IC (forthcoming June 2004); Defendant's Reply Memorandum on *Blakely v. Washington*, *U.S. v. Abu–Shawish*, No. 03–CR–211 (JPS) (Filed July 23, 2003, E.D. Wis.)

15. When the severability analysis is undertaken with regard to the SRA, at least two legal scholars have opined, however, that the Guideline provisions are severable. King & Klein, *supra*, note 11.

The remedies I've presented do not exhaust the possibilities. The Supreme Court may fashion no remedy, but instead depend upon Congress to create a *Blakely*-compliant sentencing regime. Or, the Court may find a remedy not previously considered by the lower courts or legal commentators. The relevant point is that I cannot impose a rational alternative sentence (or sentences) that would comport with every possible post-*Blakely* sentencing scheme.

### Conclusion

I hold the opinion that alternative sentencing is inconsistent with the judicial obligation to reach a decision and undermines the role of the court. Further, imposition of the recommended alternative sentence would impede, rather than promote, judicial economy. Accordingly, I respectfully decline to impose an alternative sentence in this case, or in any future case.

The court DIRECTS the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal, and DIRECTS the Clerk to post this published opinion at *http://www.wvsd.uscourts.gov.*