**UNITED STATES of America,**
**Appellee,**

v.

**Hector PENARANDA, also known**
**as "El Viejo," Defendant–**
**Appellant.**

**United States of America, Appellee,**

v.

**Luis Rojas, also known as El Gordo,**
**Defendant–Appellant.**

**Docket Nos. 03–1055(L), 03–1062(L).**

United States Court of Appeals,
Second Circuit.

July 12, 2004.

Monica R. Jacobson, Alvy & Jacobson, New York, NY, for Defendant–Appellant Hector Penaranda.

Edward D. Wilford, New York, NY, for Defendant–Appellant Luis Rojas.

Helen Cantwell and Joshua A. Levine, Assistant United States Attorneys for the Southern District of New York, New York, NY, for Appellee the United States of America.

Before: WALKER, Chief Judge, JACOBS, CALABRESI, CABRANES, STRAUB, POOLER, SACK, SOTOMAYOR, KATZMANN, PARKER, RAGGI, WESLEY, and HALL, Circuit Judges.

## CERTIFICATE OF QUESTIONS TO THE SUPREME COURT OF THE UNITED STATES

JOHN M. WALKER, JR., Chief Judge:

█ We ordered the pending appeals to be heard in banc, limited to the issue of the validity of the defendants' sentences in light of the Supreme Court's recent decision in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).[1] We have done so because the

---

1. Other issues are raised by these appeals, but those are being addressed in the normal course by the panels to which the cases are assigned. *See, e.g., People of State of N.Y. by Abrams v. 11 Cornwell Co.*, 718 F.2d 22 (2d Cir.1983) (rehearing in banc limited to narrow attorney's fees issue); *Daye v. Attorney Gen.*, 696 F.2d 186 (2d Cir.1982) (rehearing in banc limited to issue of exhaustion of state remedies). The appeals of co-defendants also

active judges of this court are unanimously of the view that we should certify to the United States Supreme Court, pursuant to 28 U.S.C. § 1254(2), questions relating to that issue. In the most general sense, our question is whether the *Blakely* decision applies to the federal Sentencing Guidelines. However, recognizing that the Supreme Court has cautioned against questions of "objectionable generality" and prefers "a definite and clean-cut question of law," *United States v. Mayer*, 235 U.S. 55, 66, 35 S.Ct. 16, 59 L.Ed. 129 (1914), we will present three precise questions to the Court: (1) a broad but "clean-cut question of law" regarding *Blakely*'s applicability to judicial fact-finding that results in an upward adjustment under the federal Sentencing Guidelines; and (2) two narrower formulations of that question pertaining specifically to the facts of these cases. Before framing our questions, we set forth the pertinent circumstances of the pending cases and the considerations that have impelled us to invoke the certification procedure.

## I. Circumstances of the Cases

### A. *Hector Penaranda*

The first case involves a sentence imposed following a jury verdict in the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge*). Defendant-appellant Hector Penaranda was charged with and convicted of one count of conspiracy to distribute heroin and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. In response to special questions on the verdict form, the jury specified that the conspiracy involved five kilograms or more of a substance containing cocaine and one kilogram or more of a substance containing heroin.

At sentencing, the district judge found by a preponderance of the evidence presented at trial that the conspiracy in fact involved at least twenty kilograms of cocaine and at least 1,200 grams of heroin. This meant that, under the Guidelines, Penaranda's crime warranted a base offense level of 34.[2] No adjustments to that base level were made, and Penaranda's relatively clean record placed him in Criminal History Category I. The corresponding Guidelines range, then, was 151 to 188 months.

At the time of sentencing, defense counsel objected to the district judge's calculations; he maintained that the proper base offense level was 32, not 34, because the judge's findings concerning drug quantities were based on a cooperating co-conspirator's uncorroborated allegations and were not verified by the jury's verdict. Defense counsel argued that the court should consider only those quantities specifically determined by the jury—five kilograms of cocaine and one kilogram of heroin—in calculating Penaranda's sentence. The court disagreed, concluded that the base offense level of 34 was appropriate, and sentenced Penaranda to 151 months' imprisonment. On appeal, Penaranda argues that his sentence violates *Blakely* because "the sentencing court determined that [he] was responsible for a larger amount of drugs than that determined beyond a reasonable doubt by the jury."[3] Letter from

remain with the panels to which they were assigned.

2. The base offense level of 34 corresponds to a quantity of 5,200 kilograms of marijuana, which is the equivalent (under the Guidelines) of twenty kilograms of cocaine plus 1,200

grams of heroin. *See* U.S.S.G. § 2D1.1(c), cmt. n. 10.

3. Although a sentence of 151 months could also have been imposed at offense level 32, which carries a range of 121 to 151 months, the district judge gave no indication that he

Monica R. Jacobson, Esq., pursuant to Fed. R.App. P. 28(j), to Roseann Mac-Kechnie, Clerk of the Court (July 8, 2004).

### B. *Luis Rojas*

The second case pending before us also originates in the United States District Court for the Southern District of New York (Allen G. Schwartz, *Judge*), but it involves a sentence imposed following a guilty plea. Defendant-appellant Luis Rojas pled guilty, without a plea agreement, to an indictment charging him with one count of conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. During the course of his plea colloquy, Rojas waived his Sixth Amendment right to a jury trial, indicated that he understood that the district judge could "impose sentence just as if a jury had brought in a verdict of guilty" against him, and admitted to having conspired to distribute "five kilograms or more" of cocaine.

After his plea, but before sentencing, Rojas argued that, under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), he could not be sentenced to more than twenty years' imprisonment (the statutory maximum for drug crimes involving indeterminate quantities of narcotics, *see* 21 U.S.C. § 841(b)(1)(C)) because he had not allocut-

ed to a determinate quantity of drugs and no jury had found that he was responsible for a determinate quantity.[4] The Government responded that *Apprendi* was not implicated because the indictment recited that the conspiracy involved five kilograms or more of cocaine, Rojas had admitted as much, and the admitted quantity was sufficiently specific to sustain a conviction for a determinate quantity of drugs under 21 U.S.C. § 841(b)(1)(A). The district court agreed with the Government and proceeded to conduct a sentencing hearing.

Following the hearing, the district judge first determined, based on his own findings of fact, that the conspiracy involved 2,900 kilograms of cocaine. Under the Guidelines, this yielded a base offense level of 38. *See* U.S.S.G. §§ 2D1.1(a), (c). The court then applied (again, based on its own fact-finding) a three-level managerial role enhancement under U.S.S.G. § 3B1.1(b), a two-level enhancement for firearm possession under U.S.S.G. § 2D1.1(b)(1), and a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b). This resulted in a total offense level of 40. Finally, the court concluded that Rojas's prior criminal activity placed him within Criminal History Category II. The applicable Guidelines range, then, was 324 to 405 months' imprisonment. The court sen-

---

would have imposed the same sentence if that level applied. On the contrary, he stated his desire to sentence Penaranda, who was sixty-nine years old at the time of sentencing, to the minimum possible term of imprisonment. *See* Transcript of Hearing, January 28, 2003, at 12. Thus, the judge's selection of offense level 34 has added thirty months to the sentence the defendant otherwise would have received. *Cf. United States v. Bermingham*, 855 F.2d 925, 934–35 (2d Cir.1988) (challenge to sentence within overlapping sentencing ranges need not be resolved where judge indicates that the same sentence would be imposed under either range).

4. A conviction under 21 U.S.C. §§ 841(b)(1)(A) and 846 for conspiracy to distribute five kilograms or more of cocaine generally supports a sentence of up to a maximum term of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A). But where the jury has failed to make specific findings concerning quantity, the statutory maximum of twenty years' imprisonment, applicable to convictions for drug crimes involving indeterminate quantities of narcotics, applies. *See* 21 U.S.C. § 841(b)(1)(C); *United States v. Thomas*, 274 F.3d 655, 663, 666 (2d Cir.2001) (in banc) (relying on *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348).

tenced Rojas within that range, to 360 months' imprisonment.

On appeal, Rojas argues that "the district court usurped the jury function and violated [his] Sixth Amendment rights." Specifically, he maintains that "issues of fact that can result in an increase in the sentence a defendant receives must be decided by a jury by proof beyond a reasonable doubt."

## II. Considerations Affecting Certification

### A. *The Certification Procedure*

■ Section 1254(2) (formerly section 1254(3)) of Title 28 provides:

Cases in the courts of appeal may be reviewed by the Supreme Court by the following methods:

. . .

(2) By certification at any time by a court of appeals of any question of law in any civil or criminal case as to which instructions are desired, and upon such certification the Supreme Court may give binding instructions or require the entire record to be sent up for decision of the entire matter in controversy.

The Supreme Court has instructed that certification is reserved for "the rare instances . . . when [it] may be advisable in the proper administration and expedition of judicial business." *Wisniewski v. United States,* 353 U.S. 901, 902, 77 S.Ct. 633, 1 L.Ed.2d 658 (1957) (per curiam). We have heeded that admonition and used the procedure sparingly. The last time was twenty-three years ago. *See Iran Nat'l Airlines Corp. v. Marschalk Co.,* 453 U.S. 919, 101 S.Ct. 3154, 69 L.Ed.2d 1002 (1981).

### B. *The Relevant Legal Context*

Since November 1, 1987, when the Sentencing Guidelines first became effective, district judges have been resolving disputed issues of fact to determine both the applicable sentencing range and the appropriateness of departures above or below the applicable range. Fourteen months after the Guidelines system went into effect, the Supreme Court upheld its constitutionality against delegation and separation-of-powers challenges. *See Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Thereafter, the Court clarified that judicial fact-finding under the Guidelines could extend even to acquitted conduct "so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts,* 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (per curiam). Of course, fact-finding by district judges in connection with sentencing was a regular practice before the Guidelines. *See, e.g., United States v. Fatico,* 603 F.2d 1053, 1055–56 (2d Cir.1979). Indeed, such fact-finding comports with 18 U.S.C. § 3661, which states that " '[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.' " *Watts,* 519 U.S. at 158, 117 S.Ct. 633 (Scalia, J., concurring) (alteration in original) (quoting § 3661 in observing that "[i]n my view, neither the [Sentencing] Commission nor the courts have authority to decree that information which would otherwise justify enhancement of sentence or upward departure from the Guidelines may not be considered for that purpose . . . if it pertains to acquitted conduct").

Four years ago, the Supreme Court ruled that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120

S.Ct. 2348. Although the dissenting Justices in *Apprendi* said that the Court's "reasoning strongly suggest[ed]" that the determinate sentencing scheme of the Sentencing Guidelines was no longer constitutional, *see id.* at 551, 120 S.Ct. 2348 (O'Connor, J., with whom Rehnquist, C.J., and Kennedy and Breyer, JJ., joined, dissenting), we have understood *Apprendi* to be limited, as the majority opinion in that case states, to "any fact that increases the penalty for a crime *beyond the prescribed statutory maximum,*" *id.* at 490, 120 S.Ct. 2348 (emphasis added), and therefore have not required that any fact-finding necessary for application of the Guidelines be done by a jury. *See United States v. Garcia,* 240 F.3d 180, 184 (2d Cir.2001). All other circuits have adopted a similar understanding of *Apprendi.*[5]

Two years ago the Supreme Court applied *Apprendi* to require a jury to determine a fact that the state legislature had prescribed as a condition for imposing the death penalty:

> Capital defendants, no less than noncapital defendants, we conclude, are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment.

*Ring v. Arizona,* 536 U.S. 584, 589, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

Then on June 24 of this year the Supreme Court decided *Blakely. Blakely* involves a sentencing guideline scheme of the State of Washington. That state's statutory law prescribes sentencing ranges for various combinations of facts concerning the defendant's offense and prior record. Although one state statute set the maximum punishment for class B felonies, and therefore Blakely's crime, at ten years' imprisonment, other state statutes specified that, for the particular class B felony committed by Blakely of second-degree kidnaping with a firearm, a sentencing range of 49 to 53 months was appropriate, absent any aggravating circumstances. *See Blakely,* 124 S.Ct. at 2534 (citing Wash. Rev.Code Ann. §§ 9.94A.320, .310(1), .310(3)(b); App. 27 (2000)). The sentencing judge imposed a sentence of 90 months, adding 37 months to the statutory range because the defendant "had acted with 'deliberate cruelty,' a statutorily enumerated ground for departure in domestic-violence cases." *Id.* at 2535–36 (quoting Wash. Rev.Code Ann. § 9.94A.390(2)(h)(iii)).

The Supreme Court ruled that the Sixth Amendment did not permit the sentencing judge to increase the sentence above the 49–to–53–month range based on facts that were neither reflected in the jury's verdict nor admitted by the defendant. *Id.* at 2536–39.

### C. *Reasons for Certification*

A common characteristic of *Apprendi, Ring,* and *Blakely* is that a state legislature had made the critical decisions setting the boundaries that the Court held the sentencing judge was not permitted to exceed without either a jury's fact-finding or a defendant's admission. Thus, *Apprendi* instructed that the judge could not find a

---

**5.** *See United States v. Baltas,* 236 F.3d 27, 40–41 (1st Cir.2001); *United States v. Williams,* 235 F.3d 858, 863–64 (3d Cir.2000); *United States v. Kinter,* 235 F.3d 192, 199–200 (4th Cir.2000); *United States v. Doggett,* 230 F.3d 160, 164–65 (5th Cir.2000); *United States v. Corrado,* 227 F.3d 528, 542 (6th Cir.2000); *United States v. Behrman,* 235 F.3d 1049, 1054 (7th Cir.2000); *United States v. Aguayo-Delgado,* 220 F.3d 926, 932–33 (8th Cir.2000); *United States v. Hernandez–Guardado,* 228 F.3d 1017, 1026–27 (9th Cir.2000); *United States v. Heckard,* 238 F.3d 1222, 1235–36 (10th Cir.2001); *United States v. Nealy,* 232 F.3d 825, 829 n. 3 (11th Cir.2000); *In re Sealed Case,* 246 F.3d 696, 698–99 (D.C.Cir. 2001).

fact that resulted in a sentence above the "*statutory* maximum." 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added). *Ring* ruled that defendants were "entitled to a jury determination of any fact on which the *legislature* conditions an increase in their maximum punishment." 536 U.S. at 589, 122 S.Ct. 2428 (emphasis added). *Blakely* prohibited a sentencing judge from increasing a sentence above a range specified by state *statutes.*

The question presented in the cases pending before us is whether the Sixth Amendment also prohibits a sentencing judge from finding facts, not reflected in the jury's verdict or admitted by the defendant, that form the basis for determining the applicable adjusted offense level under the administratively-promulgated federal Sentencing Guidelines. The district judge in Penaranda's case found by a preponderance of the evidence that the crime for which Penaranda was convicted involved at least twenty kilograms of cocaine and at least 1,200 grams of heroin, and, on that basis, increased Penaranda's base offense level from 32 to 34. The judge in Rojas's case found by a preponderance of the evidence that Rojas was responsible for 2,900 kilograms of cocaine, and increased Rojas's base offense level from 32 (the level corresponding to at least five kilograms but less than fifteen kilograms of cocaine, *see* U.S.S.G. § 2D1.1(c)) to 38 based on that finding. The judge in Rojas's case further adjusted the offense level upward by five levels, based on findings that Rojas had possessed a gun in connection with his crime and had played a managerial role in the offense of conviction. If the *Blakely* principle applies, then both defendants' sentences could be invalid. The problem we face, however, is that we cannot be certain whether a majority of the Supreme Court would extend the reasoning of *Blakely* to these cases.

Some portions of the majority opinion in *Blakely* indicate that the decision does apply to the federal Sentencing Guidelines. The majority states, for example:

> Our precedents make clear, however, that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

*Blakely,* 124 S.Ct. at 2537 (emphasis in original; internal citations omitted). It is arguable that this passage applies to the Sentencing Guidelines and invalidates the sentences in the pending cases. *Blakely* might mean that the judge may not find facts that determine which Guidelines range is applicable. In Penaranda's case, the judge found that Penaranda was responsible for twenty kilograms of cocaine and 1,200 grams of heroin, and it was that finding that made the Guidelines range of 151 to 188 months applicable. Similarly, the judge's finding in Rojas's case that Rojas was responsible for 2,900 kilograms of cocaine made the Guidelines range of 324 to 405 months applicable.

On the other hand, the distinct administrative provenance of the federal Sentencing Guidelines may place them outside the ambit of the *Blakely* principle. Unlike the provisions at issue in *Apprendi, Ring,* and *Blakely,* the federal Sentencing Guidelines, although promulgated pursuant to statute, *see* 28 U.S.C. § 994(a), and "hav[ing] the force and effect of laws," *Mistretta,* 488 U.S. at 413, 109 S.Ct. 647 (Scalia, J., dissenting), are not themselves prescribed by statute. They are "the equivalent of legislative *rules* adopted by federal agencies." *Stinson v. United States,* 508 U.S. 36, 45,

113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (emphasis added). The Guidelines were issued by "an independent commission in the judicial branch." 28 U.S.C. § 991(a). Moreover, the Supreme Court has stated that "there can be no serious argument that [in establishing the Sentencing Commission] Congress *combined legislative and judicial power* within the Judicial Branch," *Mistretta,* 488 U.S. at 394, 109 S.Ct. 647 (emphasis added), and that "Congress did not unconstitutionally delegate its own authority [to the Commission]," *id.* at 395, 109 S.Ct. 647. That the Sentencing Guidelines are not promulgated by Congress could prove critical to the determination of whether or not they are affected by *Blakely.*[6] *Compare United States v. Booker,* 375 F.3d 508, 510, No. 03–4225, 2004 WL 1535858, at *1 (7th Cir. July 9, 2004) (Posner, J.) (holding that *Blakely* applies to the Sentencing Guidelines), *with id.* at 515, 2004 WL 1535858, at *6 (Easterbrook, J., dissenting), *and United States v. Pineiro,* 377 F.3d 464, No. 03–30437, 2004 WL 1543170 (5th Cir. July 12, 2004) (King, J.).

We also note that, although Justice O'Connor, in Part IV(B) of her dissenting opinion in *Blakely* (which was joined by Justice Breyer), expressed the view that *Blakely* applied to the federal Sentencing Guidelines, *see Blakely, id.* at 2548–51, the Court's opinion expressly stated that "[t]he Federal Guidelines are not before us, and we express no opinion on them," *id.* at 2538 n. 9. Moreover, two of the Justices in dissent, the Chief Justice and Justice Kennedy, explicitly declined to join Part IV(B) of Justice O'Connor's dissent. *See id.* at 2543–44.

Furthermore, even if *Blakely* applies to some aspects of sentencing under the Guidelines, it is unclear whether judicial fact-finding that determines the applicable Guidelines range is prohibited. In Penarada's case, for example, the jury's verdict of guilty on a count charging conspiracy to distribute more than five kilograms of cocaine and more than one kilogram of heroin subjected the defendant to a sentence of life under 21 U.S.C. § 841(b)(1)(A). We cannot be certain whether *Blakely* prevents the sentencing judge from finding facts that determine which Guidelines range within that statutory maximum is applicable. *Cf. Edwards v. United States,* 523 U.S. 511, 513–14, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998). In sum, there are reasonable arguments both in favor of and against the proposition that *Blakely* applies to the Sentencing Guidelines, and reasonable questions (if it does so apply) about whether it prohibits judicial fact-finding that determines the applicable Guidelines sentencing range within an applicable statutory maximum.[7]

In the usual case, a measure (even a very large measure) of doctrinal uncertainty may be tolerated. But we believe this is one of those "rare instances" when "the proper administration and expedition of judicial business" warrants certification of a question to the Supreme Court. *See*

---

**6.** At least one district court, relying on a passage in Justice O'Connor's dissent in *Blakely,* has ruled that the non-statutory nature of the Guidelines is not a sufficient basis for distinguishing them from the statutory scheme at issue in *Blakely. See United States v. Croxford,* 324 F.Supp.2d 1230, 1240–41, No. 2:02–CR–00302–PGC, 2004 WL 1521560, at *8–*9 (D.Utah, July 7, 2004). As Judge Friendly observed, however, "dissenting opinions are not always a reliable guide to the meaning of the majority; often their predictions partake

of Cassandra's gloom more than of her accuracy." *Local 1545, United B'hood of Carpenters and Joiners v. Vincent,* 286 F.2d 127, 132 (2d Cir.1960).

**7.** We observe that the Department of Justice has taken the position that *Blakely* does not apply to the Sentencing Guidelines. *See* Memorandum from James B. Comey, Deputy Attorney General, to All Federal Prosecutors 2–3 (July 2, 2004).

*Wisniewski,* 353 U.S. at 902, 77 S.Ct. 633. *Blakely* not only casts a pall of uncertainty on more than 220,000 federal sentences imposed since *Apprendi* was decided, see *Blakely,* 124 S.Ct. at 2549 n. 2 (O'Connor, J., dissenting) (citing statistics from the Administrative Office of the United States Courts), but it also raises the prospect that many thousands of future sentences may be invalidated or, alternatively, that district courts simply will halt sentencing altogether pending a definitive ruling by the Supreme Court. We are convinced that a prompt and authoritative answer to our inquiry is needed to avoid a major disruption in the administration of criminal justice in the federal courts—disruption that would be unfair to defendants, to crime victims, to the public, and to the judges who must follow applicable constitutional requirements. In thousands of federal cases presently scheduled for trial, parties and judges must decide whether to prove and how to charge scores of facts that could affect Guideline ranges, from drug quantities, U.S.S.G. § 2D1.1, to intended loss, *id.* § 2B1.1, from aggravating role, *id.* § 3B1.1, to abuse of a position of trust, *id.* § 3B1.3, from degrees of bodily injury, *id.* § 2A2.2(b)(3), to reasonably foreseeable jointly undertaken criminal activity, *id.* § 1B1.3(a)(1)(B). At present, there are also thousands of cases in which a trial has occurred and the district court is poised to impose sentence, and thousands of pending appeals in which the decision whether or not to apply *Blakely* to the Sentencing Guidelines will prove determinative.

Until they know definitively whether *Blakely* is applicable to the Sentencing Guidelines, district courts and courts of appeals must choose initially between two options (aside from suspending sentencing and/or disposition of appeals therefrom altogether). First, they may conclude that *Blakely* is not applicable and continue to apply the Guidelines as they have been doing since 1987. Second, they may conclude that *Blakely* applies to the Sentencing Guidelines and proceed to select one of several alternative procedural means for implementing it. Whichever conclusion turns out to be incorrect, and one of them will, thousands of cases soon will be adversely affected.[8] The result will be that thousands of defendants, sentenced in accordance with the incorrect conclusion, will have to be returned to court for resentencing, and that, if the Court rejects the Government's position that *Blakely* does not affect the Guidelines, the Government (at least in those cases where the time for jury fact-finding is long past and the judgment has become final) might be foreclosed from pursuing the sentence it believes to be appropriate.

Moreover, as already has become evident, once a court concludes that *Blakely* applies to the Guidelines, it is without guidance as to the means for achieving compliance. Among the disparate techniques that courts have selected to date (albeit only tentatively in some cases) are the following:[9] (1) imposing sentence without regard to the Guidelines, obeying only the statutory maximum and minimum, but "consider[ing] the Guidelines as providing useful instruction on the appropriate sentence," *see Croxford,* 324 F.Supp.2d

---

8. With district courts being called upon to impose sentence at a rate of almost 75,000 each year, *see* Administrative Office of the United States Courts, *Judicial Business of the United States Courts,* Table D–4 (2003), the potential for administrative chaos is massive and imminent.

9. Many techniques currently being implemented by district judges in the aftermath of *Blakely* can be found on the Internet at Sentencing Law and Policy, *at* <http://sentencing.typepad.com> (last visited July 12, 2004; copy available in Court of Appeals' file).

at 1238–41, 1248, 2004 WL 1521560, at *6–*9, *15 (holding that Guidelines are unconstitutional in their entirety); (2) imposing sentence following a guilty plea based solely on facts admitted by the defendant, *see United States v. Gonzalez,* No. 03 Cr. 41(DAB), 2004 WL 1444872 (S.D.N.Y. June 28, 2004); (3) re-determining the applicable sentence following a guilty plea by considering only facts admitted by the defendant, selecting the applicable Guidelines offense level for those facts, reducing that level by two for acceptance of responsibility, and then sentencing the defendant to the maximum of the range for the newly adjusted offense level, *see United States v. Shamblin,* No. CRIM.A.2:03–00217, 2004 WL 1468561, 323 F.Supp.2d 757 (S.D.W.Va. June 30, 2004); (4) recalling the jury that convicted the defendant to determine whether the facts warranting an enhancement under the Guidelines have been proven, *see N.J. Jury Convicts Moors,* Philadelphia Inquirer, July 2, 2004; and (5) imposing sentence on each count of the indictment based only on facts found by the jury and then running the sentences consecutively to achieve the maximum lawful portion of the term that the Guidelines would have required without the limitation of *Apprendi, see United States v. Green,* —— F.Supp.2d ——, ——, No. CR. A. 02–10054–WGY, 2004 WL 1381101, at *40 (D.Mass. June 18, 2004) (ruling a few days before *Blakely* was decided).

Many, if not all, of these various attempts to implement *Blakely* ultimately may prove misguided—or even wholly unnecessary. In the meantime, however, while these judicial approaches are being litigated, defendants, victims, and the public will be left uncertain as to what sentences are lawful.

### D. *Questions for Certification*

To afford the Supreme Court an opportunity to adjudicate promptly the threshold issue of whether *Blakely* applies to the federal Sentencing Guidelines, we therefore certify the following three questions (the first pertains to both cases pending before us, the second to Penaranda's case, and the third to Rojas's case):

1.  Does the Sixth Amendment permit a federal district judge to find facts, not reflected in a jury's verdict or admitted by a defendant, that form the basis for determining the applicable adjusted offense level under the federal Sentencing Guidelines and any upward departure from that offense level?

2.  In a case where a jury has convicted a defendant of possessing with intent to distribute five kilograms or more of cocaine and one kilogram or more of heroin, does the Sixth Amendment permit a federal district judge to determine, under the federal Sentencing Guidelines, the quantity of drugs for which the defendant is responsible and upon which his base offense level and corresponding sentencing range will be calculated, under U.S.S.G. § 2D1.1?

3.  In a case where a defendant has pled guilty to conspiring to distribute five kilograms or more of cocaine, does the Sixth Amendment permit a federal district judge to determine, under the federal Sentencing Guidelines, (a) the quantity of drugs for which the defendant is responsible and upon which his base offense level and corresponding sentencing range will be calculated, under U.S.S.G. § 2D1.1; (b) the applicability of a two-level enhancement to the base offense level for carrying a gun in connection with the offense, under U.S.S.G. § 2D1.1(b)(1); and (c) the applicability of a three-level managerial role enhancement under U.S.S.G. § 3B1.1(b)?

We recognize that the current term of the Supreme Court has ended, but we respectfully request that the Court not only entertain this certification, but do so at its earliest convenience, with an expedited briefing and hearing schedule, *cf. Dames & Moore v. Regan,* 453 U.S. 654, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981) (setting case for oral argument on June 24, 1981, after regularly scheduled arguments concluded, and deciding case on July 2, 1981); *Iran Nat'l Airlines,* 453 U.S. at 919, 101 S.Ct. 3154 (answering certified questions seventeen days after certification), in order to minimize, to the extent possible, what we see as an impending crisis in the administration of criminal justice in the federal courts.

The Clerk will promptly transmit to the Supreme Court this opinion and the briefs, joint appendices, and records.[10]

---

**10.** We understand that under 28 U.S.C. § 1254(2), the Supreme Court may "require the entire record to be sent up for decision of the entire matter in controversy." In ordering the records transmitted, we are seeking only to expedite consideration of the certified questions, not to suggest that the Court should decide the entirety of the matters in controversy.