**UNITED STATES of America,**

v.

**Erik MARRERO, Defendant.**

**No. 04 CR. 0086(JSR).**

United States District Court, S.D. New York.

July 21, 2004.

Sean Hecker, Federal Defender Division Legal Aid Society, New York, NY, for Defendant.

Daniel Lawrence Stein, New York, NY, for Plaintiff.

## OPINION

RAKOFF, District Judge.

Still more about the Sentencing Guidelines.

Defendant Eric Marrero is a chronic drug addict and petty thief, who was previously convicted in New York state court of criminal possession of a loaded firearm (a felony). On March 11, 2004 he pleaded guilty to the one count indictment in this case, charging him with being a felon in possession of another firearm, to wit, a .32 caliber revolver. *See* plea transcript, 3/11/04. The Court set a sentencing date of June 28, 2004, and a Presentence Investigation Report was then prepared by the Probation Office, which calculated the sentencing range under the federal Sentencing Guidelines as 24 to 30 months imprisonment. This calculation reflected, *inter alia*, an upward adjustment for the obliteration of the firearm's serial number, an allegation that Marrero had not admitted at his plea. *See id.* Without the adjustment for the obliteration, the prescribed

sentencing range would have been 21 to 27 months. *See* sentencing transcript, 7/19/04.

Shortly prior to Marrero's sentencing date, the Supreme Court announced its decision in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), in which the Court held that the Sixth Amendment prohibited sentencing a defendant above the legally prescribed maximum sentence based on a fact that was neither admitted by the defendant nor found by a jury. *Id.* In order to evaluate the applicability of *Blakely* to the instant case, counsel for both parties then requested, and received, an adjournment of sentence. After receiving further submissions, the Court, on July 19, 2004, sentenced Marrero to 21 months in prison, *see* sentencing transcript, 7/19/04, and, in the course of so doing, joined the growing number of courts that have held the federal Sentencing Guidelines unconstitutional in some or all respects. *See, e.g., United States v. Booker*, 375 F.3d 508 (7th Cir. 2004); *United States v. Einstman*, 325 F.Supp.2d 373, 04 Cr. 97, 2004 WL 1576622 (S.D.N.Y.2004); *United States v. Croxford*, 324 F.Supp.2d 1255, 2004 WL 1551564 (D.Utah 2004); *but see United States v. Pineiro*, 2004 WL 1543170, 377 F.3d 464 (5th Cir.2004) (guidelines constitutional). This Opinion will briefly elaborate the reasons for that determination.

*First,* although the Second Circuit, rather than ruling on whether the Sentencing Guidelines are unconstitutional, has sought expedited guidance from the Supreme Court, *United States v. Penaranda*, 375 F.3d 238 (2d Cir.2004), this Court, when confronted with the sentencing in this case, did not believe it had the luxury of waiting further for such guidance. Neither party to the instant case had sought further adjournment of the sentence beyond July 19, 2004; and, even if they had, there are both constitutional and practical limits on how long a district court may defer a criminal sentence, especially where, as here, the defendant is detained. *See generally United States v. Bryce*, 287 F.3d 249, 256 (2d Cir.2002). Accordingly, the Court felt compelled to proceed to sentence and, in so doing, reach the underlying legal issue of the constitutionality of the Sentencing Guidelines.

*Second,* while the Government chose not to make any written submission on the issue of the Guidelines' constitutionality, it orally articulated at the July 19 sentence hearing its preferred view that the Sentencing Guidelines remain constitutional because they have previously withstood constitutional challenge and because the Court in *Blakely* expressly stated that "[t]he Federal Guidelines are not before us, and we express no opinion on them." *Blakely,* 124 S.Ct. at 2538 fn. 9. As Deputy Attorney General Comey put it in his general directive to federal prosecutors on July 2, 2004, "[t]he government's legal argument ... is that the lower federal courts are not free to invalidate the Guidelines given the prior Supreme Court decisions upholding their constitutionality, and that, on the merits, the Guidelines are distinguishable from the system invalidated in *Blakely.*" Memorandum to All Federal Prosecutors, from James Comey, Deputy Attorney General, regarding Departmental Positions and Policies in Light of *Blakely v. Washington* (July 2, 2004).

But the fact that the Supreme Court has previously upheld the constitutionality of the Sentencing Guidelines in cases addressing challenges different from those presented by *Blakely* in no way disempowers a district court from ruling upon their constitutionality in a case raising a *Blakely*-based, Sixth Amendment challenge. As Judge Cassell noted in *Croxford, supra,* "While the Supreme Court has rejected other constitutional challenges to the Fed-

eral Sentencing Guidelines, it has never considered how the Sixth Amendment's right to a jury trial applies to the Guidelines." *United States v. Croxford*, 2004 WL 1551564, at *1, 324 F.Supp.2d at 1257. *See also United States v. Booker*, 375 F.3d at 513.

As for the claim that the Guidelines are distinguishable from the Washington State system invalidated in *Blakely*, the Government itself, as *amicus* in *Blakely*, questioned "whether those differences are constitutionally significant." *Blakely*, 124 S.Ct. at 2538 n. 9.

More importantly, virtually every court that has compared the two systems has concluded that the federal Guidelines are, if anything, "more vulnerable to constitutional attack than the Washington guidelines the [Supreme] Court invalidated [in *Blakely* ]." *United States v. Croxford*, 2004 WL 1551564, at *1, 324 F.Supp.2d at 1257; *accord, e.g., United States v. Einstman*, 2004 WL 1576622, at *4, 325 F.Supp.2d at 377; *United States v. Shamblin*, 323 F.Supp.2d 757, 766, 03–00217, 2004 WL 1468561, at 7–8 (S.D.W.Va. June 30, 2004).

In seeking expedited guidance from the Supreme Court, the Second Circuit mentioned only one principal respect in which the federal Sentencing Guidelines differ from the Washington State provisions found unconstitutional in *Blakely*, to wit, that the latter involve statutory enhancements whereas the former are more akin to administrative regulations. *United States v. Penaranda*, 375 F.3d at 244. But it is hard to see how this makes a difference of constitutional significance, since, as the Second Circuit also noted, the Sentencing Guidelines have " 'the force and effect of laws.' " *Id.* at 244–45(quoting with approval Justice Scalia's dissent in *Mistretta*

*v. United States*, 488 U.S. 361, 413, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989)). And while the Sentencing Guidelines have been technically viewed as emanating from the Judicial Branch rather than from Congress, *Mistretta*, 488 U.S. at 385–397, 109 S.Ct. 647,[1] this is irrelevant from the standpoint of *Blakely*, which focuses on the manner in which the Constitution confides to the jury certain prerogatives that no other body, whether legislative, executive, or judicial in origin, can override. *Blakely*, 124 S.Ct. at 2538–39, 2542–43.

It follows that, in this Court's view, the teachings of *Blakely* apply in full force to the Sentencing Guidelines and render unconstitutional any sentencing enhancement prescribed by the Guidelines that is not (a) found by a jury beyond a reasonable doubt, (b) admitted or stipulated by the defendant, as in his plea allocution or in an agreement with the Government, or (c) is otherwise binding upon the defendant as a matter of law, as in the case of his prior criminal convictions. *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In this case, this means that the Guidelines enhancement based on an obliteration of the revolver's serial number, to which the defendant neither admitted nor stipulated, cannot constitutionally be imposed.

*Third*, the Court does agree, however, with the Government's "fallback" position—to which defendant's counsel ultimately agreed as well, *see* sentencing transcript, 7/19/04—that if such sentencing enhancements are unconstitutional, the entire Sentencing Guidelines must be set aside, since the offending sections cannot meaningfully be severed from the whole. The Guidelines, on their face, represent an

1. This view may now be subject to revision as the result, *inter alia*, of the legislation passed by Congress earlier this year, known as the "Feeney Amendment," that, among much

else, limits judicial membership on the seven-member Sentencing Commission to a minority of three members. 28 U.S.C. § 991(a).

intricate set of weights and measures, of upward enhancements and downward adjustments, that were intended to balance, however imperfectly, a host of competing sentencing considerations. To accept the "downward" aspects and ignore the "upward" aspects would be to frustrate the will of Congress. *See United States v. Einstman,* 2004 WL 1576622, at 6–7, 325 F.Supp.2d at 379–80. Accordingly, the entire Sentencing Guidelines must be set aside as unconstitutional.

*Fourth,* this means that, for now at least, the Court must revert to the previous regime, by which the Court was called upon to exercise broad but informed discretion to arrive at a sentence no less than any statutory minimum (there is none in this case) and no greater than any statutory maximum (which is here 10 years). "Informed" discretion, however, means taking account of all relevant information—and the Guidelines certainly are that, representing, as they do, the Commission's attempt to arrive at a fair sentencing balance of relevant factors. While many district judges have chafed at the rigidity of the Guidelines that, in too many cases, have caused judges to impose sentences that they regard as artificial, unjust, or worse, it is likely that these same judges would welcome the benefits to be derived from consulting a set of non-binding guidelines that may help a court to weigh relevant factors without commanding a particular result.

█ Thus, in this very case, the Court, as reflected in the sentencing transcript, 7/19/04, took important account of the factors and reasoning that would have resulted, if the Guidelines applied, to a sentence of 24 months in this case. Ultimately, the Court imposed a slightly more lenient sentence—21 months—chiefly because the Court gave greater weight than the Guidelines would have permitted to the sympathetic, even pitiable features of the defen-

dant's background, such as his repeated but unsuccessful attempts to rid himself of his recurrent heroin addiction and his refusal, even in the throes of such addiction, to become a drug dealer or to engage in theft except in moments of desperation.

The Court is of the belief that, if the Sentencing Commission were allowed to continue, not as a promulgator of laws, but as a source of helpful guidance in the form of detailed but non-binding Guidelines, the overwhelming majority of federal judges would take meaningful account of such guidelines, and the sentences then meted out, while being more flexible and more attuned to the individual circumstances of each case, would as a whole conform to the Commission's policy choices, avoid unconscionable disparities, and, overall, be as just as any system designed by mere mortals is likely to be.